1

2

3

4

5

6

7

8                     **UNITED STATES DISTRICT COURT**

9            **CENTRAL DISTRICT OF CALIFORNIA — SOUTHERN DIVISION**

10

11   EUN JUNG LIM,                    │  CASE NO. CV 22-00137-SB (AS)

12                    Plaintiff,      │
                                      │  **ORDER DISMISSING FIRST AMENDED**
13          v.                        │
                                      │  **COMPLAINT WITH LEAVE TO AMEND**
14   CITY OF IRVINE AND IRVINE        │
     POLICE DEPARTMENT, et al.,       │
15                                    │
                    Defendants.       │
16

17

18

19                               **I.**

20                          **INTRODUCTION**

21

22        On January 25, 2022, Eun Jung Lim ("Plaintiff"), proceeding

23   pro se and in forma pauperis, filed a civil rights complaint

24   pursuant to 42 U.S.C. § 1983. (Dkt. No. 1).  On   February 22,

25   2022, Plaintiff filed a First Amended Complaint (or "FAC").  (Dkt.

26   No. 8).

27

28

1       The First Amended Complaint sues City of Irvine, Irvine Police
2   Department, and eight individual Irvine Police Department employees
3   ("IPD Defendants") and seven individual Orange County District
4   Attorney's Office employees ("OCDA Defendants") (collectively,
5   "Individual Defendants") for the Individual Defendants' alleged
6   involvement in charging Plaintiff with assault and battery based
7   on fabricated conduct, and the malicious prosecution of Plaintiff,
8   following an incident on January 25, 2020. (See FAC at 2-9).
9   Plaintiff asserts violations of the Fourteen Amendment Due Process
10  and Equal Protection Clauses, 42 U.S.C. § 1981, and Plaintiff's
11  "rights under color of law," along with claims of malicious
12  prosecution, intentional infliction of emotional distress (or
13  "IIED"), and indemnification. (See FAC at 9-19).   The IPD
14  Defendants are: (1) former Irvine Police Chief Michael Hamel; (2)
15  Sergeant Defective Sean Paul Crawford; (3) Detective Michelle
16  Hinig; (4) Officer Rene Nutter; (5) Officer Michael McNall; (6)
17  Officer Eric Steele; (7) Officer James Moore; and (8) Sergeant
18  William Russell.  (FAC at 3-5).   The OCDA Defendants are: (1)
19  Assistant Investigator Jerry Poole; (2) Lead Investigator Misty
20  Daniels; (3) District Attorney Todd Spitzer; (4) Deputy District
21  Attorney Dustin Rice; (5) Deputy District Attorney Taylor Krone;
22  (6) Deputy District Attorney Allison Taylor Targoff; and (7) Deputy
23  District Attorney Gaganjot Batth.  City of Irvine and Irvine Police
24  Department are sued for the actions of Defendants Nutter, McNall,
25  and Steele.  (FAC at 3).  All Individual Defendants are sued in
26  both their individual and official capacities.  (FAC at 3-6).
27
28

For the reasons discussed below, the Court DISMISSES Plaintiff's First Amended Complaint WITH LEAVE TO AMEND.[1]

## II.

### PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that on January 25, 2020, while visiting her mother at Hoag Memorial Hospital Presbyterian, she was assaulted and had her phone stolen by Herbert Conrad, a security officer there. (FAC at 2, 7). When Defendants Nutter, McNall, and Steele arrived at the scene, McNall completed a police report of the incident, and included Conrad's false allegations that Plaintiff had punched Conrad in the face. (FAC at 7). McNall also took photographs of Plaintiff's hands. (Id.). When Defendant Hinig arrived at the hospital, she viewed the hospital's video footage of the incident but lied about its contents. (Id.). Hinig then made a declaration for a warrant of Plaintiff's arrest, charging her with assault and battery. (Id.).

Following this incident, Plaintiff was charged and prosecuted by the Orange County District Attorney ("OCDA") based on the fabricated report. (FAC at 8). Plaintiff wrote letters to Defendant Spritzer requesting that he view the video footage so he could see that the police report was false. (Id.). But the OCDA's office did not issue a subpoena to the hospital to obtain the video

---

[1] Magistrate judges may dismiss a complaint with leave to amend without approval from the district judge. McKeever v. Block, 932 F.2d 795, 798 (9th Cir. 1991).

footage, and the footage was not considered during the prosecution of Plaintiff's case.  (Id.).

The OCDA dismissed its case against Plaintiff in May 2021. (Id., see also Notice of Errata to Plaintiff's First Amended Complaint at 2).  While Plaintiff's case was pending, she made formal requests to the Irvine Police Department ("IPD") to obtain a copy of Hinig's declaration in support of the arrest warrant, but she did not receive a copy until after her case was dismissed. (Id.).  Meanwhile, Plaintiff's mother died during the pendency of the case.  (FAC at 9).

Based on these factual allegations, the First Amended Complaint asserts the following claims: (1) Fourteen Amendment due process claims against all Defendants for their prosecution of Plaintiff based on the false allegations in the police report, and their failure to consider the video footage of the incident showing that Plaintiff was innocent of the charges (FAC at 9-10); (2) Fourteenth Amendment equal protection claims against all Defendants for their prosecution of Plaintiff based on false allegations, and their refusal to consider the video footage evidence or provide an explanation for their failure to do so, which Plaintiff contends constitutes discriminatory and differential treatment (FAC at 11-12); (3) 42 U.S.C. § 1981 racial discrimination claims against all Defendants (FAC 13); (4) malicious prosecution claims against the OCDA Defendants for initiating a criminal proceeding against Plaintiff, based on false allegations, without probable cause, and in total disregard of contrary evidence (FAC 14-15); (5) claims

for violating Plaintiff's constitutional rights under the color of law against all Defendants for the IPD's actions leading to Plaintiff being erroneously charged, and the OCDA's actions prosecuting Plaintiff in reckless disregard for the truth (FAC at 15-16); (6) intentional infliction of emotional distress claims against all Defendants (FAC at 17); and (7) an indemnification claim against Defendant City of Irvine. (FAC at 18). Plaintiff seeks monetary relief. (FAC at 19).

## III.

### STANDARD OF REVIEW

Since Plaintiff is proceeding in forma pauperis, her Complaint is subject to sua sponte review and must be dismissed if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief may be granted; or (3) seeks monetary relief from a defendant immune from such relief. See 28 U.S.C. § 1915(e)(2)(B); Lopez v. Smith, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc); Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998); see also Calhoun v. Stahl, 254 F.3d 845, 845 (9th Cir. 2001) (per curiam) (Section 1915(e)(2)(B) applies to all complaints brought by plaintiffs proceeding in forma pauperis).

Dismissal for failure to state a claim is appropriate if a complaint fails to proffer "enough facts to state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; accord Hartmann v. Cal. Dep't of Corr. & Rehab., 707 F.3d 1114, 1122 (9th Cir. 2013). A plaintiff must provide "more than labels and conclusions" or a "formulaic recitation of the elements" of his or her claim. Twombly, 550 U.S. at 555. However, "[s]pecific facts are not necessary; the [complaint] need only give the defendant fair notice of what the claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (citation and alterations omitted); Twombly, 550 U.S. at 555.

In considering whether to dismiss a complaint, the Court must accept the factual allegations of the complaint as true, Wood v. Moss, 572 U.S. 744, 755 n.5 (2014); Erickson, 551 U.S. at 93-94, construe the pleading in the light most favorable to the pleading party, and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969); Berg v. Popham, 412 F.3d 1122, 1125 (9th Cir. 2005). Pro se pleadings are "to be liberally construed" and "held to less stringent standards" than those drafted by a lawyer. Erickson, 551 U.S. at 94 (citation omitted); see also Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) ("Iqbal incorporated the Twombly pleading standard and Twombly did not alter courts' treatment of pro se filings; accordingly, we continue to construe pro se filings liberally when evaluating them under Iqbal."). Nevertheless, dismissal for failure to state a claim can be warranted based on either the lack of a cognizable legal theory or the absence of factual support for a cognizable legal

theory.  See Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).  A complaint may also be dismissed for failure to state a claim if it discloses some fact or complete defense that will necessarily defeat the claim.  Rivera v. Peri & Sons Farms, Inc., 735 F.3d 892, 902 (9th Cir. 2013).

**IV.**

**DISCUSSION**

The Court has reviewed the FAC under the aforementioned standards and has concluded the FAC is deficient and must be dismissed with leave to amend.

**A.   Plaintiff Fails to State a Fourteenth Amendment Due Process Claim**

Plaintiff alleges that Defendants violated her Fourteenth Amendment due process rights when they prosecuted her based on false allegations.  (FAC at 9-10).  "To obtain relief on § 1983 claims based upon procedural due process, the plaintiff must establish the existence of (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; and (3) lack of process."  Guatay Christian Fellowship v. Cnty. of San Diego, 670 F.3d 957, 983 (9th Cir. 2011) (citation and alterations omitted).  Thus, "[t]he first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'"  American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 59 (1999);

see also Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 569
(1972) ("The requirements of procedural due process apply only to
the deprivation of interests encompassed by the Fourteenth
Amendment's protection of liberty and property."). Plaintiff's
due process claims concern the prosecution against her following
the January 25 incident. She asserts that Defendants violated her
due process rights by accepting Conrad's false allegations without
further proof, failing to consider the video footage showing she
is innocent, and prosecuting her based on the false allegations in
the police report. (FAC at 9-10). However, the case was dismissed
in May 2021. (FAC at 8; Notice of Errata to Plaintiff's First
Amended Complaint at 2).

It appears, therefore, that Plaintiff suffered no
constitutional deprivation of a protected liberty or property
interest as a result of the prosecution and related conduct. For
example, Plaintiff does not allege that she was detained while the
assault and battery charges were pending against her.

Plaintiff also does not allege that Defendants deliberately
fabricated evidence in violation of her due process rights. See
Spencer v. Peters, 857 F.3d 789, 793 (9th Cir. 2017); Devereaux v.
Abbey, 263 F.3d 1070, 1074-75 (9th Cir. 2001) (en banc). To state
a § 1983 claim for fabrication of evidence, Plaintiff must allege
that "(1) the defendant official deliberately fabricated evidence
and (2) the deliberate fabrication caused the plaintiff's
deprivation of liberty." Spencer, 857 F.3d at 798. Plaintiff
fails to state facts that show that "Defendants continued their

investigation of [her] despite the fact that they knew or should have known that [s]he was innocent," or that "Defendants used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information." Devereaux, 263 F.3d at 1076.

Accordingly, Plaintiff fails to state a claim for violation of her right to due process.

**B.    Plaintiff Fails to State an Equal Protection Claim**

Plaintiff's First Amended Complaint references her Fourteenth Amendment right to equal protection and the general discriminatory treatment she experienced (see FAC at 11-12), but she does not allege any grounds to support such a claim. To state an equal protection claim, typically a plaintiff must allege that "defendants acted with an intent or purpose to discriminate against [her] based upon membership in a protected class," such as a particular race. Furnace v. Sullivan, 705 F.3d 1021, 1030 (9th Cir. 2013) (citation omitted). "Intentional discrimination means that a defendant acted at least in part because of a plaintiff's protected status." Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003) (citation omitted) (emphasis in original); see also Monteiro v. Tempe Union High Sch. Dist., 158 F.3d 1022, 1026 (9th Cir. 1998) (to state an equal protection claim, plaintiff "must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent").

Here, Plaintiff claims that she was "discriminatorily treated when the Defendants refused to consider evidence from the footage" and provided no explanation for their refusal to do so. (FAC at 12). However, aside from the conclusory allegations that Defendants lacked a "legitimate reason" for their actions (id.), Plaintiff fails to provide any facts that raise a plausible inference that Defendants' actions had a discriminatory motive – i.e., that Defendants intentionally discriminated against her because of her race, or any other basis. Plaintiff cannot merely allege that Defendants had no "compelling government interest" to prosecute Plaintiff "based on false allegations." (FAC at 12). Instead, to show discrimination, Plaintiff would need to allege facts showing that Defendants treated her differently from other, similarly situated individuals.

As such, Plaintiff does not state an Equal Protection claim of discrimination.

**C.   Plaintiff Fails to State a Claim Under 42 U.S.C. § 1981**

Plaintiff asserts a racial discrimination claim in violation of 42 U.S.C. § 1981, but again, fails to provide specific grounds for granting relief. (FAC 13-14). Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." To state a

Section 1981 claim, a plaintiff "must allege (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerns one or more of the activities enumerated in the statute." Keum v. Virgin Am. Inc., 781 F. Supp. 2d 944, 954 (N.D. Cal. 2011); see also Parks Sch. of Bus., Inc., v. Symington, 51 F.3d 1480, 1487 (9th Cir. 1995) (citation omitted) (To state a Section 1981 claim, a plaintiff "need only allege that [she] suffered discrimination . . . on the basis of race."); General Building Contractors Assoc., Inc. v. Pennsylvania, 458 U.S. 375, 391 (1982) (Section 1981 "can be violated only by purposeful discrimination"); Evans v. McKay, 869 F.2d 1341, 1344 (9th Cir. 1989) ("What is required in a section 1981 action . . . is that the plaintiffs must show intentional discrimination on account of race.").

Plaintiff's Section 1981 claim fails for similar reasons as her Equal Protection claim. Although the FAC alleges that Plaintiff belongs to a racial minority, the FAC does not allege that Defendants discriminated against Plaintiff based on her race. Cf. Johnson v. Riverside Healthcare Sys., LP, 534 F.3d 1116, 1123 (9th Cir. 2008) (Section 1981 "creates a cause of action only for those discriminated against on account of their race or ethnicity[.]"); Lowe v. City of Monrovia, 775 F.2d 998, 1010 (9th Cir. 1985) ("[S]ection 1981 redresses only discrimination based on race."), amended by 784 F.2d 1407 (9th Cir. 1986). Accordingly, Plaintiff does not state a claim based on 42 U.S.C. § 1981.

**D.   Plaintiff's Violation of Constitutional Rights "Under Color of Law" Claim Appears Redundant**

Plaintiff alleges a claim against all Defendants for violating her due process rights and other rights guaranteed by the Constitution while acting under the color of law.  (FAC at 15-16). Although "[t]he policies underlying § 1983 include compensation of persons injured by deprivation of federal rights and prevention of abuses of power by those acting under color of state law," Robertson v. Wegmann, 436 U.S. 584, 590—91 (1978), the Court cannot identify any authority giving rise to a freestanding violation of constitutional rights "under color of law" claim. Instead, it appears that Plaintiff's claim is redundant and duplicative of her other claims.  Thus, the Court dismisses the violation of Constitutional rights "under color of law" claim with leave to amend so that Plaintiff may clarify and distinguish these claims if necessary.

**E.   This Court Lacks Subject Matter Jurisdiction Over Plaintiff's Remaining Claims**

Under 28 U.S.C. § 1367(a), if a district court has original jurisdiction over one or more claims, the court also has supplemental jurisdiction over all state law claims that arise out of the same transaction or occurrence.  28 U.S.C. § 1367(a). However, if all federal claims have been dismissed, the district court no longer has supplemental jurisdiction over the state law claims.  Id.  Here, the Court has dismissed all of Plaintiff federal

claims with leave to amend.  As a result, the court no longer has jurisdiction over Plaintiff's non-federal claims, including the claims of malicious prosecution (Count 4)[2] and intentional infliction of emotional distress (Count 6).  (See FAC at 14-15, 17).  These state claims are dismissed with leave to amend.

**F.   Plaintiff Fails to State Claims Against the City of Irvine and Irvine Police Department**

Plaintiff seeks damages from the City of Irvine and Irvine Police Department under the doctrine of respondeat superior for the actions and/or inactions of the IPD Defendants.  A local government entity "cannot be held liable solely because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory."  Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691 (1978. Instead, a municipality, such as the City of Irvine, or the departments and agencies within these entities, is liable under § 1983 only for constitutional violations occurring as the result of an official government policy or custom.  Collins v. City of Harker Heights, Tex., 503 U.S. 115, 121 (1992).  To prove municipal liability under § 1983, Plaintiff must show both a deprivation of a constitutional right and a departmental policy, custom, or practice that was the "moving force" behind the constitutional violation.  Villegas v. Gilroy Garlic Festival Ass'n, 541 F.3d 950,

---

[2] Plaintiff's malicious prosecution claim also fails because the OCDA Defendants are absolutely immune from suit, as discussed in Section IV.H., infra.

957 (9th Cir. 2008).  There must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation."  Collins, 503 U.S. at 123.  "[P]roof of a single incident of unconstitutional activity," or even a series of "isolated or sporadic incidents," will not give rise to liability under § 1983.  Gant v. Cnty. of Los Angeles, 772 F.3d 608, 618 (9th Cir. 2014) (citation omitted).  Rather, liability must be "founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy."  Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996).

Here, Plaintiff fails to allege a constitutional violation pursuant to any policy, custom, or practice of the City of Irvine or the Irvine Police Department.  Therefore, Plaintiffs' allegations are insufficient to establish municipal liability, and any claims against the City of Irvine and Irvine Police Department are dismissed with leave to amend.[3]

**G.   Plaintiff Fails to State an Official-Capacity Claim**

Plaintiff names the Individual Defendants in both their individual and official capacities.  (FAC at 3-6).  Official capacity claims are "another way of pleading an action against an entity of which an officer is an agent."  Hafer v. Melo, 502 U.S.

---

[3] Plaintiff also raises a separate indemnification claim against Defendant City of Irvine.  (FAC at 18-19).  Because Plaintiff fails to demonstrate a viable claim against the City of Irvine, there is no basis for liability against the City.

21, 25 (1991) (quoting <u>Monell</u>, 436 U.S. at 690 n. 55).   Thus, Plaintiff's claims against the Individual Defendants in their official capacities are effectively claims against the City of Irvine and Orange County.

Because official-capacity claims are treated as suits against the entity, it is redundant to name multiple defendants of the same agency in their official capacity.   <u>See</u>, <u>e.g.</u>, <u>Rosas v. Baca</u>, 2012 WL 933609, at *2 (C.D. Cal. Mar. 20, 2012) (dismissing claims against three of four individual defendants sued in their official capacities as duplicative); <u>Thomas v. Baca</u>, 2006 WL 132078, at *1 (C.D. Cal Jan. 13, 2006) (dismissing claims against six of seven individual defendants sued in their official capacities as duplicative).   Since Plaintiff names the City of Irvine and Irvine Police Department as Defendants, any claims against the IPD Defendants in their official capacity are redundant and subject to dismissal.

Moreover, as explained in Section IV.F., <u>supra</u>, any claims against the City of Irvine and Orange County fail because municipalities cannot be held liable under § 1983 merely for the acts of its employees or subordinates, unless Plaintiff alleges facts showing that the alleged conduct was caused by any custom, policy, or practice of the City, County, or its departments.   <u>See</u> <u>Monell</u>, 436 U.S. at 694.   As with the City of Irvine, Plaintiff does not allege that Orange County had any custom, policy, or practice that resulted in the alleged constitutional violations.

**H.   Plaintiff Fails to State A Claim Against the OCDA Defendants Because These Defendants Are Entitled to Absolute Immunity**

Plaintiff asserts various claims against the OCDA Defendants for their involvement in prosecuting Plaintiff based on false allegations following the January 25 incident. (FAC at 5-6, 9-17). Specifically, Plaintiff alleges that the OCDA Defendants prosecuted her based on the fabricated police report, and Defendant Spitzer refused to consider the hospital video footage as evidence of Plaintiff's innocence following the letters that Plaintiff wrote to him. (FAC at 8). These allegations fail to state a claim against the OCDA Defendants because, as prosecutors, they enjoy absolute immunity from suit under 42 U.S.C. § 1983.

In Imbler v. Pachtman, the United States Supreme Court held that "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983." 424 U.S. 409, 431 (1976). This immunity, however, is limited to those "prosecutorial actions that are intimately associated with the judicial phase of the criminal process." Van de Kamp v. Goldstein, 555 U.S. 335, 341 (2009). In Van de Kamp, the Supreme Court extended its conclusion from Imbler and held that the scope of a prosecutor's absolute immunity from claims asserted under § 1983 extends to claims that a prosecutor failed to properly train prosecutors, failed to properly supervise prosecutors, and failed to establish an information system containing potential impeachment. Id. at 339.

The Supreme Court has held that conduct which is not prosecutorial, but rather administrative, is not entitled to immunity. Examples of this conduct include "advising police officers during the investigative phase of a criminal case, performing acts which are generally considered functions of the police, acting prior to having probable cause to arrest, or making statements to the public concerning criminal proceedings." Botello v. Gammick, 413 F.3d 971, 976-77 (9th Cir. 2005) (citation omitted). But "[p]rosecutors are absolutely immune from liability for gathering additional evidence after probable cause is established or criminal proceedings have begun when they are performing a quasi-judicial function." Broam v. Bogan, 320 F.3d 1023, 1030 (9th Cir. 2003). Thus, investigators who gather evidence "in preparation for a prosecutor's case may enjoy absolute immunity." KRL v. Moore, 384 F.3d 1105, 1113 (9th Cir. 2004).

To decide whether absolute immunity attaches to a particular kind of prosecutorial activity, one must take account of functional considerations which underlie the public policy considerations at the heart of the immunity. Van de Kamp, 555 U.S. at 342. After noting that prosecutors enjoyed absolute immunity from common-law tort actions, the Van de Kamp Court noted that these considerations countenance absolute immunity because they arise out of the "'concern that harassment by unfounded litigation' could both 'cause a deflection of the prosecutor's energies from his public duties' and also lead the prosecutor to 'shade his decisions instead of exercising the independence of judgment required by his public trust.'" Van de Kamp, 555 U.S. 341 (quoting Imbler, 424 U.S.

1   at 423).  The Court continued, "a prosecutor inevitably makes many

2   decisions that could engender colorable claims of constitutional

3   deprivation . . . [d]efending these decisions, often years after

4   they were made, could impose unique and intolerable burdens upon a

5   prosecutor responsible annually for hundreds of indictments and

6   trials."  Id. at 342 (quoting Imbler, 424 U.S. at 425-26).

7

8       Plaintiff does not allege that any of the OCDA Defendants

9   acted outside the scope of their prosecutorial duties and conducted

10  administrative or investigative work not covered by the scope of

11  civil immunity.  Rather, the specific conduct to which Plaintiff

12  objects is Defendant Spitzer's alleged refusal to view the hospital

13  video footage to determine that the allegations against Plaintiff

14  in the police report were false.  (FAC at 8).  But Defendant

15  Spitzer's conduct, if true, does not fall outside the scope of

16  absolute civil immunity.  The FAC does not indicate that Defendant

17  Spitzer assisted the police in their investigation in any manner

18  whatsoever.  His actions prosecuting Plaintiff fall within Imbler's

19  dictate that immunity applies for actions that are "intimately

20  associated with the judicial phase of the criminal process."  424

21  U.S. at 430.  Thus, suit against Defendant Spitzer cannot proceed

22  as he is entitled to absolute immunity.

23

24      The Court so holds, too, for all other OCDA Defendants,

25  because they were merely performing their duties related to the

26  prosecution of Plaintiff.  Thus, Defendants Poole, Daniels, Rice,

27  Krone, Targoff, and Batth all enjoy absolute immunity because their

28  work on these matters was intimately associated with the judicial

phase of the criminal process, and all claims pending against them are dismissed with leave to amend.

## I.   Plaintiff Fails to State a Claim Against Defendants Hamel, Crawford, Moore, Russell, Nutter, and Steele

Plaintiff fails to state a claim against Defendants Hamel, Crawford, Moore, Russell, Nutter, and Steele in their individual capacities.  "[A] public official is liable under § 1983 only if he _causes_ the plaintiff to be subjected to a deprivation of his constitutional rights."  Baker v. McCollan, 443 U.S. 137, 142 (1979) (citation omitted) (emphasis in original); Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).  "To meet this causation requirement, the plaintiff must establish both causation-in-fact and proximate causation."  Id.; see also Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981).  "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation."  Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988).

Here, with the exceptions of Defendants McNall and Hinig, Plaintiff has not alleged facts demonstrating Defendants were "the actual and proximate cause of any constitutional violation."  Leer, 844 F.2d at 634.  That is, although Plaintiff has named eight IPD Defendants, she has not explained how any of them except Defendants McNall and Hinig violated her constitutional rights.  Indeed,

Plaintiff raises no allegations at all against Defendants Hamel,[4]
Crawford, Moore, Russell, Nutter, or Steele.  (FAC at 2-3, 7-19).
Instead, Plaintiff only alleges that Defendant McNall included
Conrad's false allegations in his police report, and that Defendant
Hinig saw video footage of the scene but lied, and made a
declaration for warrant of Plaintiff's arrest, charging her with
assault and battery.  (FAC at 7).  In any amended complaint,
Plaintiff should name as Defendants only those individuals she
believes were the cause of her injuries.

Moreover, to the extent Plaintiff alleges claims against
Defendants Hamel, Crawford, Moore, and Russell based on their
status as supervisors, they also fail as a matter of law.  Liability
under § 1983 cannot be predicated on a theory of respondeat
superior, or vicarious liability, which makes a supervisor liable
for the wrongful acts of his or her subordinates.  See Taylor v.
List, 880 F.2d 1040, 1045 (9th Cir. 1989); Peralta v. Dillard, 744
F.3d 1076, 1085 (9th Cir. 2014) (en banc), cert. denied, 135 S.
Ct. 946 (2015) ("Supervisors aren't vicariously liable for
constitutional violations under section 1983.").  To be held
liable, a supervising officer must personally take some action
against the plaintiff or "set in motion a series of acts by
others . . . which he knew or reasonably should have known, would

_____

[4] Plaintiff alleges that while Defendant Hamel was Police
Chief, she made formal requests to the IPD to obtain Defendant
Hinig's declaration in support of the arrest warrant.  (FAC at 8).
However, Plaintiff does not allege that Defendant Hamel was
involved in the IPD's failure to provide Plaintiff with a copy of
the declaration.  (See id.).

1    cause others to inflict the constitutional injury" on the
2    plaintiff.  <u>Larez v. City of Los Angeles</u>, 946 F.2d 630, 646 (9th
3    Cir. 1991) (citation and alterations omitted).  In other words, a
4    supervisor is liable for subordinates' constitutional violations
5    only "if the supervisor participated in or directed the violations,
6    or knew of the violations and failed to act to prevent them."
7    <u>Taylor</u>, 880 F.2d at 1045.

8

9        Again, Plaintiff fails to provide any evidence that Defendants
10   Hamel, Crawford, Moore, or Russell acted personally to violate her
11   constitutional rights.   Rather, Plaintiff merely alleges that
12   Defendant Hamel is liable "for the actions and/or inactions of
13   [Defendant] Crawford," Defendant Crawford is liable "for the
14   actions and/or inactions of Defendant Hinig," and that Defendants
15   Moore and Russell are liable "for the actions and/or inactions of
16   Defendants Nutter, McNall, and Steele."  (FAC at 3-5).

17

18       Because the First Amended Complaint includes insufficient
19   factual allegations in support of these mere legal conclusions,
20   Plaintiff's claims against Defendants Hamel, Crawford, Moore,
21   Russell, Nutter, and Steele are dismissed with leave to amend.

22

23                                **V.**

24                             **CONCLUSION**

25       For the reasons discussed above, the Court DISMISSES
26   Plaintiff's claims WITH LEAVE TO AMEND.

27

28

If Plaintiff still wishes to pursue this action, she shall file a Second Amended Complaint no later than 30 days from the date of this Order.  The Second Amended Complaint must cure the pleading defects discussed above and shall be complete in itself without reference to prior pleadings.  See L.R. 15-2 ("Every amended pleading filed as a matter of right or allowed by order of the Court shall be complete including exhibits.  The amended pleading shall not refer to the prior, superseded pleading.").  This means that Plaintiff must allege and plead any viable claims again.

In any amended complaint, Plaintiff should identify the nature of each separate legal claim and confine her allegations to those operative facts supporting each of her claims.  For each separate legal claim, Plaintiff should state the civil right that has been violated and the supporting facts for that claim only.  Pursuant to Federal Rule of Civil Procedure 8(a), all that is required is a "short and plain statement of the claim showing that the pleader is entitled to relief."  However, Plaintiff is advised that the allegations in the Second Amended Complaint should be consistent with the authorities discussed above.  In addition, the Second Amended Complaint may not include new Defendants or claims not reasonably related to the allegations in the previously filed complaints.  Plaintiff is strongly encouraged to utilize the standard civil rights complaint form when filing any amended complaint, a copy of which is attached.

Plaintiff is explicitly cautioned that failure to timely file a Second Amended Complaint, or failure to correct the deficiencies

described above, may result in a recommendation that this action, or portions thereof, be dismissed with prejudice for failure to prosecute and/or failure to comply with court orders. See Fed. R. Civ. P. 41(b); Applied Underwriters, Inc. v. Lichtenegger, 913 F.3d 884, 891 (9th Cir. 2019) ("The failure of the plaintiff eventually to respond to the court's ultimatum - either by amending the complaint or by indicating to the court that it will not do so - is properly met with the sanction of a Rule 41(b) dismissal.") (citing Edwards v. Marin Park, Inc., 356 F.3d 1058, 1065 (9th Cir. 2004) (emphasis omitted). Plaintiff is further advised that if she no longer wishes to pursue this action in its entirety or with respect to particular Defendants or claims, she may voluntarily dismiss all or any part of this action by filing a Notice of Dismissal in accordance with Federal Rule of Civil Procedure 41(a)(1). A form Notice of Dismissal is attached for Plaintiff's convenience.

　　**IT IS SO ORDERED.**

Dated: June 23, 2022

　　　　　　　　　　　　　　　　　　_____/s/_____
　　　　　　　　　　　　　　　　　　ALKA SAGAR
　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE